## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TYRONE JACKSON, individually and on behalf of all others similarly situated, | : |
| | : |
| | : Case No: |
| Plaintiff, | : |
| | : Hon. |
| v. | : |
| | : |
| DORTCH ENTERPRISES, LLC, and GREAT LAKES TACO, LLC, and LOUIS C. DORTCH, JR., jointly and severally, | : |
| | : |
| | : |
| Defendants. | : |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Tyrone Jackson ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned attorneys, hereby brings this Collective and Class Action against Defendants Dortch Enterprises, LLC, Great Lakes Taco, LLC, and Louis C. Dortch, Jr. (hereinafter "Defendants") to recover unpaid overtime compensation, liquidated damages, interest, attorney's fees, costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201, *et seq*. and common law. Plaintiff's allegations herein are based upon knowledge as to matters relating to himself and upon information and belief as to all other matters.

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, Tyrone Jackson, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' systematic failure to pay overtime in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and its failure to pay for all non-overtime hours worked under the common law theory of unjust enrichment.

2.      Defendants own and operate more than two dozen Taco Bell franchise locations across the state of Michigan.

3.      Defendants employed dozens (if not hundreds) of non-exempt employees to operate their numerous Taco Bell franchise locations.

4.      Throughout the relevant time period, Defendants maintained a corporate policy and practice of refusing to pay their non-exempt employees for all hours worked.

5.      Defendants failed to pay their non-exempt employees at the proper overtime rates by failing to include non-discretionary bonuses and other remuneration in the regular rate of pay calculation for Plaintiff and all others similarly situated.

6.      Defendants also knowingly permitted, and instructed, their non-exempt employees to perform off-the-clock work without pay.

2

7.     As a result of Defendants' failure to properly compensate Plaintiff and all similarly situated employees, Defendants willfully violated and continue to violate the FLSA, 29 U.S.C. § 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

8.     Defendants' failure to pay Plaintiff and all similarly situated employees for all time worked also resulted in Defendants being unjustly enriched.

9.     Plaintiff and all similarly situated employees are entitled to back pay, liquidated (double) damages, interest, reasonable attorney's fees, costs, and other relief as appropriate under the law.

## JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

11.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

12.     Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis.

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 29 U.S.C. § 1367 because the claims arise from the same case and controversy as Plaintiff's FLSA claims.

14.     Venue lies in this District pursuant to 28 U.S.C. § 1391 because Defendants' headquarters are in Grand Blanc, Michigan, and the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## PARTIES

15.     Plaintiff is an adult resident of Clinton Township, in Macomb County, Michigan and was Defendants' employee from October 2021 to February 8, 2024. Plaintiff's consent to join form is attached as ***Exhibit A***.

16.     Additional putative collective members were or are employed by Defendants as non-exempt employees during the past three years and their consent forms will also be filed in this case.

17.     Defendant Dortch Enterprises, LLC is a Michigan limited liability company authorized to do business in Michigan.

18.     In or about 2017, Defendants Dortch Enterprises and Louis Dortch, Jr. purchased over 20 restaurants from Taco Bell Corporation and organized Great Lakes Taco, LLC.

19.     Defendant Great Lakes Taco, LLC is a Michigan limited liability

company authorized to do business in Michigan.

20.     Defendant Louis C. Dortch, Jr. is an individual and the Managing Member of Defendants Dortch Enterprises, LLC and Great Lakes Taco, LLC. Defendant Louis C. Dortch, Jr. exercises control over significant aspects of Dortch Enterprises, LLC and Great Lakes Taco, LLC's day-to-day functions, including the compensation of their employees.

21.     Defendants engaged in a common "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.; 29 C.F.R. § 791.237.

22.     Defendants were "joint employers" within the meaning of the FLSA, and have, to their mutual financial benefit and competitive business advantage, harmed Plaintiff and all others similarly situated in violation of the FLSA.

23.     Defendants Dortch Enterprises, LLC and Great Lakes Taco, LLC share the same resident agent for purposes of service, *to wit*: Louis C. Dortch Jr., 8487 Retreat Drive, Grand Blanc, Michigan 48439.

## FACTUAL ALLEGATIONS

24.     Plaintiff began working for Defendants in October 2021 as a salaried non-exempt employee earning $52,000 per year.

25.     Plaintiff worked at Defendants' Taco Bell location at 3268 Rochester Road, Troy, Michigan 48083.

26.     Defendants converted Plaintiff to an hourly non-exempt employee in approximately January 2023, and he remained an hourly employee until his termination on February 8, 2024.

27.     Defendants trained Plaintiff for 1-2 days alongside a general manager and then for approximately eight (8) weeks by regional managers, corporate representatives, and area coaches. Defendants trained Plaintiff on schedule and attendance expectations, timekeeping, inventory procedures, credentialing management and inspections, and other company policies and practices.

28.     The relevant training, policies, and expectations that all of Defendants' non-exempt employees received was substantially, if not entirely, the same.

29.     As a non-exempt employee, Plaintiff worked an average of five (5) shifts per week for an average of 50 hours per workweek.

30.     Plaintiff's most recent hourly base rate of pay was $20.00.

31.     Plaintiff was also eligible to earn non-discretionary bonuses, including but not limited to quarterly incentive bonuses (based on metrics linked to customer satisfaction, food calls, employee retention, etc.) and an annual bonus based on store performance.

32.     Defendants' non-exempt employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

## The Regular Rate of Pay

33.    Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." 29 C.F.R. §778.108.

34.    No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

35.    There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.  Defendants carry the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo*., 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendants' non-exempt employees for work performed are included in the base calculation unless specifically excluded by statute.

36.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

37.     Plaintiff's "total remuneration" included not only his base hourly pay, but also his non-discretionary bonuses. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…".

38.     Defendants' bonuses do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

39.     Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiff and those similarly situated are entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

40.     Plaintiff and those similarly situated have regularly worked in excess of 40 hours a week and paid some overtime for those hours but at a rate that does not include Defendants' payments for bonuses as required by the FLSA.

41.     For example, Plaintiff's January 16, 2024 paystub shows 94.98 total hours (comprised of 56 hours at a $20.00 base rate, 25 hours of PTO paid at the $20.00 base rate, and 13.98 hours of overtime paid at $30.00 per hour) and gross earnings of $2,607.42, inclusive of $568.02 in non-discretionary bonus pay. The $30.00 per hour overtime rate does not account for the bonus pay, and therefore violates the FLSA.

42.     In another example, Plaintiff received two pay statements on December 19, 2023, both of which covered the same pay period (11/29/2023-12/12/2023). The paystub reflecting Plaintiff's hours and pay shows 97.23 total hours (comprised of 72 hours as a $20.00 base rate, 8 hours of PTO paid at the $20.00 base rate, and 17.23 hours of overtime paid at $30.00 per hour) and gross earnings of $3,116.90, inclusive of a $1,000 non-discretionary bonus related to Plaintiff's ability to increase profitability of his Taco Bell location. Plaintiff's non-discretionary bonus for this pay period came on a separate pay statement in the amount of $1,572.05. The $30.00 per hour overtime rate paid does not account for the bonus pay, and therefore violates the FLSA.

43.     To the extent that any of Defendants' premium compensation paid to Plaintiff, and those similarly situated, could be qualified and applied as a credit under 29 U.S.C. §§ 207(7)(h), those credits may only be applied to the same workweek or

work period in which the premiums were paid. *Herman v. Fabri-Centers of Am., Inc.*, 308 F. 3d 580, 590-92 (6th Cir. 2002).

44.     In a Department of Labor Opinion Letter dated December 23, 1985, the Deputy Administrator stated: "We wish to point out that the surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Opinion Letter Fair Labor Standards Act* (FLSA), 1985 WL 304329 at 3 (1985).

45.     As a result of these *prima facie* FLSA violations, Defendants are jointly and severally liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

## Unpaid Off-the-Clock Work

46.     At all relevant times, Defendants controlled the work schedules, duties, protocols, assignments, compensation, and employment conditions of Plaintiff and similarly situated employees.

47.     At all relevant times, Plaintiff and similarly situated employees were non-exempt employees, subject to the requirements of the FLSA.

48.     Due to the nature of their operations, Defendants required Plaintiff and all similarly situated employees to wear uniforms, aprons, and protective equipment

during their work shifts in order to protect food (and consumers) from contamination and to comply with federal and state government safety, health, and food regulations and mandates.

49.   The company-issued equipment included a uniform shirt, compliant footwear, apron, hat and/or visor, and hairnets.

50.   Defendants' written attendance policy required Plaintiff and similarly situated employees to be ready to work at their scheduled time, specifically noting: "This means being in proper uniform, apron on, hairnets on, hats on *before you clock in*." (emphasis added).

51.   Defendants' written attendance policy also threatened Plaintiff and similarly situated employees with significant disciplinary action for "[a]ll tardies and/or absences…."

52.   Defendants' attendance policy pressured Plaintiff and similarly situated employees into performing mandatory and compensable pre-shift work without pay.

53.   This mandatory pre-shift donning/preparation process was compensable work because it was an integral and indispensable part of Plaintiff's and similarly situated employees' principal work activities and because Defendants required employees to do all or part of it at the worksite before clocking in.

54.   Defendants directly benefited from this mandatory pre-shift work.

11

55.     Plaintiff and similarly situated employees clocked in and out from the same timekeeping system, regardless of their particular job titles.

56.     Defendants were able to track the amount of time Plaintiff and similarly situated employees spent in connection with the mandatory pre-shift preparation activities described above. However, Defendants failed to do so.

57.     The above-described policies and procedures resulted in Plaintiff and similarly situated employees not being paid for mandatory pre-shift work activities. Because Plaintiff and similarly situated employees regularly worked more than 40 hours per week, Defendants' policies and practices also deprived employees of overtime pay.

**Unjust Enrichment**

58.     Prior to hiring, Defendants provided prospective employees, including Plaintiff and all similarly situated employees, a written offer setting a start date, title, schedule, job requirements, offered rate of pay, benefits, and conditions of employment.

59.     Defendants maintained documents demonstrating the promised hourly wage for each employee, including but not limited to: offer letters, paystubs, and/or other payroll records.

60.     In consideration for Plaintiff's work, Defendants promised Plaintiff a base amount of pay.

61.     Plaintiff and other similarly situated employees accepted Defendants' offers of employment with the understanding that they would receive the base rate of pay for all non-overtime hours worked in each workweek.

62.     The aforementioned offers and acceptances created binding and valid agreements between Defendants and their non-exempt employees.

63.     Plaintiff and similarly situated employees performed and fulfilled their duties under their agreements with Defendants by carrying out their job responsibilities, which included but were not limited to, complying with the attendance policy, outfitting themselves in proper uniform and protective equipment prior to clocking in, and completing the other functions of their job during their scheduled shifts.

64.     As a result, Plaintiff and similarly situated employees were deprived of wages owed to them, including unpaid "gap time" wages (i.e., hours less than 40 per workweek).

## FLSA COLLECTIVE ACTION ALLEGATIONS

65.     Pursuant to 29 U.S.C § 216(b), Plaintiff brings a cause of action on behalf of:

> *All current and former non-exempt employees who worked for Defendants at any Taco Bell location at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

66.     Excluded from the proposed FLSA Collective are Defendants' FLSA exempt employees.

67.     Plaintiff and putative FLSA Collective members are "similarly situated" as defined in 29 U.S.C § 216(b) because, among other things, all such individuals were eligible for and did receive non-discretionary bonuses, but such pay was not calculated into their regular rate as required by the FLSA.

68.     Plaintiff and putative FLSA Collective members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were subject to Defendants' attendance policies which mandated pre-shift off-the-clock work.

69.     As part of its regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA when they:

      a. Willfully failed to pay Plaintiff and the FLSA Collective premium overtime wages for all hours worked in excess of 40 hours per workweek; and

      b. Willfully failed to record all of the time that Plaintiff and the FLSA Collective worked for Defendants' benefit.

14

70.     Defendants were or should have been aware that federal law required them to pay overtime premiums to Plaintiff and the FLSA Collective for all hours worked in excess of 40 per workweek.

71.     Defendants' unlawful conduct was widespread, repeated, and consistent.

72.     Upon information and belief, Defendants utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

73.     Resolution of this action requires inquiry into common facts.

74.     These similarly situated individuals are known to the Defendants, are readily identifiable, and can be located through Defendants' payroll records, which Defendants must  maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

75.     Court-authorized notice to Defendants' non-exempt employees is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means—including email and text message—and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

76.    Upon information and belief, there are at least hundreds of similarly situated current and former employees of Defendants who were not paid their required compensation and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## RULE 23 CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> *All current and former non-exempt employees who worked for Defendants at any Taco Bell location during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

78.    The Rule 23 Class members are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates that there are hundreds of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

79.    There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual Rule 23 Class members. These common legal and factual questions include but are not limited to:

a.  Whether Rule 23 Class members performed unpaid pre-shift work activities, and if so, whether such work activities are compensable; and

b.  Whether Rule 23 Class members are owed wages for time spent performing pre-shift work activities, and if so, the appropriate amount thereof.

80.  Plaintiff's claims are typical of the Rule 23 Class members' claims because he and all members suffered damages as a direct and proximate result of Defendants' common and systematic payroll policies and practices.

81.  Plaintiff's claims arise from the same policies, practices, promises, conduct and legal theories as all other Class members' claims.

82.  Plaintiff will fully and adequately protect the Rule 23 Class members' interests and retained counsel who are qualified and experienced in the prosecution of wage-and-hour class actions. Neither Plaintiff nor his counsel has interests that are contrary to, or conflicting with, the Rule 23 Class members' interests.

83.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed throughout the state.

84.  This case will be manageable as a Rule 23 class action. Plaintiff and his counsel know of no unusual difficulties in this case, and Defendants have advanced,

networked computer and payroll systems that will allow the class, wage, and damages *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

85.    Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

86.    Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

87.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

88.    Each Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

89.    Defendants were also joint "employers" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.; 29 C.F.R. § 791.2.

90.    Defendants engaged in an "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.; 29 C.F.R. § 791.237.

91.    At all times relevant to this action, each Defendant "suffered or

permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

92.     At all relevant times, Defendants had policies and practices of willfully refusing to pay Plaintiff and all others similarly situated the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

93.     The mandatory pre-shift work performed every shift by Plaintiff and all others similarly situated were an essential part of their jobs, and these activities and the time associated with these activities were not *de minimis*.

94.     In workweeks where Plaintiff and all others similarly situated worked over 40 hours, the unpaid pre-shift time should have been paid at the federally mandated rate of 1.5 times each employee's regular rate of pay, including non-discretionary bonus pay and all other remuneration. 29 U.S.C. §§ 207(a) and (e).

95.     Defendant's violations of the FLSA were knowing and willful.

96.     As a result of Defendant's willful failure to compensate Plaintiff and all others similarly situated at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of

29 U.S.C. § 255(a).

97.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages, plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 CLASS ACTION - UNJUST ENRICHMENT**

98.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

99.     At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Class member a pre-established rate of pay in consideration of the work duties Plaintiff and the Rule 23 Class members performed for Defendants' benefit.

100.    Plaintiff and every other Rule 23 Class member relied upon Defendants' promise of a pre-established rate of pay and accepted Defendants' offers by carrying out their required work duties.

101.    Defendants received a benefit from the mandatory pre-shift work in that those services protected the food products (and consumers) from contamination, and allowed Defendants to comply with federal and state governmental safety, health, and food regulations and mandates.

102.    Nevertheless, Defendants failed to pay Plaintiff and the Rule 23 Class

20

members for all their non-overtime work.

103.   By not paying Plaintiff and every other Rule 23 Class member the agreed upon wage for the mandatory pre-shift work they performed before each shift, Defendants were unjustly enriched.

104.   Defendants received and accepted the pre-shift work from Plaintiff and every other Rule 23 Class member and enjoyed the benefits derived therefrom, including increased profits, without having paid for the same.

105.   On information and belief, Defendants used the monies owed but not paid to Plaintiff and every other Rule 23 Class member to finance its various business ventures or pay its equity owners.

106.   Defendants were unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Class members performed for Defendants' benefit, without having paid Plaintiff and the Rule 23 Class members for the same.

107.   Plaintiff and the Rule 23 Class members suffered detriment due to Defendants' failure to pay them for the mandatory pre-shift work activities described herein, in that Plaintiff and the Rule 23 Class members were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

108.   As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Class member suffered damages, including but not limited to,

lost wages.

## <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests the following relief:

a.  An Order designating this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.  An Order certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Count II);

c.  An Order directing Defendants to provide Plaintiff lists of all current and former hourly employees who worked for Defendants at any time in the past three years, with designation as to who was eligible for bonuses. This list shall include the last known addresses, emails, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate

d.  An Order designating Plaintiff as representative of the proposed FLSA Collectives and Class; and undersigned counsel as Class counsel for the same;

e.  A complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

f.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

g.  A declaratory judgment that Defendants were unjustly enriched by failing to pay the Rule 23 Class for mandatory pre-shift work activities as described herein;

h.  An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collectives and the Rule

23 Class full back pay and an equal amount in liquidated damages, and any other damages available by law;

i.      An award of pre-judgment and post-judgment interest;

j.      An award of costs and expenses of this action together with reasonable attorneys' fees, and an award of a service payment to the named Plaintiff; and

k.      Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, and all others similarly situated, hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: May 9, 2024              Respectfully submitted,

*/s/ Jesse L. Young*
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.
141 E. Michigan Avenue, Suite 600
Kalamazoo, MI 49007
Tel: (269) 250-7501
jyoung@sommerspc.com

Paulina R. Kennedy (P84790)
SOMMERS SCHWARTZ, P.C.
One Town Square, 17th Floor
Southfield, Michigan 48076
Tel: (248) 355-0300
pkennedy@sommerspc.com

Jonathan Melmed (CA SBN 290218)
Laura Supanich (P85849)
MELMED LAW GROUP, P.C.
1801 Century Park East, Suite 850
Los Angeles, CA 90067

23

(310) 824-3828
jm@melmedlaw.com
lms@melmedlaw.com

*Attorneys for Plaintiff and the Proposed Collective*